## Yarberry v. Commonwealth.

(Decided May 12, 1925.)

### Appeal from Adair Circuit Court.

1. Criminal Law—Indictment and Information—Failure to Demur Waives Defects and Motion in Arrest is Unavailing, if Considering Facts as True, an Offense has been Committed by Defendant.

—Although the alleged offense may be so defectively stated in the indictment as to render it bad on demurrer, still, if, considering the facts stated in the indictment as true, offense has been committed by defendant within the jurisdiction of the court, a motion in arrest of judgment will not avail; the defect being waived by failure to demur.

2. Perjury—Before Conviction can be had for Falsely Swearing that Accused did Not Draw an Ax, an "Assault" Must Appear.—Before one can be convicted of falsely swearing that he did not draw an ax, it must appear that accused's act of drawing the ax amounted to an "assault," which is defined as an attempt or demonstration or effort, in striking distance, to strike another, although the person threatened may not be actually stricken.

3. Perjury—Instruction should Not be Given where there was no Evidence to Sustain Issue that Accused Drew his Ax.—In prosecution for falsely swearing that accused did not draw his ax, issue of whether accused did draw his ax should not have been submitted, where there was no evidence that he was within striking distance, and only one witness testified that he held ax in such manner as to show purpose to assault.

4. Perjury—Indictment Alleging that Accused did Falsely Swear that he did Not "Abuse" or "Threaten" Another is too General.— An indictment alleging that accused falsely swore that he did not "abuse" or "threaten" another is too broad, and the indictment should set out the language used; "abuse" meaning to "revile" or "vilify," "to maltreat," "to hurt," "to dishonor, "to defile;" "threaten" meaning "to utter threats against," "to menace," "to inspire with apprehension," "to alarm or attempt to alarm" or "to warn."

ROLLIN HURT and W. A. COFFEY for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Appellant was convicted of false swearing and his punishment fixed at two years' imprisonment.

It is first insisted that the indictment was insufficient. The objection, however, was not raised by demurrer, but by motion in arrest of judgment. There can be no doubt that the indictment charges a public offense, and the rule is that although the alleged offense may be so defectively stated in the indictment as to render it bad on demurrer, still if, considering the facts stated in the indictment to be true, a public offense has been committed by the defendant within the jurisdiction of the court, the motion in arrest of judgment will not avail;

the defect is waived by failure to demur.  Duncan v. Commonwealth, 165 Ky. 247, 176 S. W. 984.

It appears that at the November term, 1923, of the Adair circuit court, appellant was tried for a breach of the peace committed at the home of Matthew Akin, and the charge is that "he knowingly, wilfully and falsely swore that he was not drunk and did not abuse or threaten Matthew Akin and did not draw an axe on him." Several witnesses stated that he so testified on his trial for breach of the peace. Matthew Akin testified that appellant came to his house about one o'clock Sunday night, September 24th last, and fell against the house. He asked for witness' lantern and witness let him have it. He staggered about the yard and cursed witness. Witness stepped into the house and got his gun. Appellant stepped from the gate over to the wood pile, got the axe, and then stationed himself behind a tree and called witness all sorts of names. He had a bottle and acted like he was drunk. It looked like there was a big spoonful of whiskey in it. On cross-examination witness stated that it was a bright night, and that the distance to the yard gate was about the distance across the court house room. After appellant got the axe and reached the gate, witness stopped him with his gun. He had the axe in his right hand. Mrs. Matthew Akin testified that when appellant reached their home he appeared to be drunk. He called her husband low down names. He then went to the wood yard, got an axe and threatened to come and get him. He started into the yard, but Matthew stopped him at the gate by telling him that if he came any further he would shoot him. On cross-examination she stated that appellant had the axe up in his hand, but would not say that he had it thrown back over his shoulder. He also had the lantern in one hand.

Appellant's account of the affair is that there had been a little hard feeling between him and Matthew Akin over a line, but he thought Matthew had gotten in a good humor about it, and on the occasion in question he stopped at Matthew's home to borrow a lantern. Matthew brought him the lantern and set his gun up in the corner. Appellant went back to where his mare was and started away from the wood pile. About that time Matthew commenced "cussing" and said that appellant had called him a vile name. Appellant replied that he did not say a word to him, and that if he did he would take it all

back. He also told Matthew that if he wanted his lantern to come and get it. Matthew said that he had been laying up a good "cussing" for appellant, called him everything, and said that he had a good notion to shoot appellant. After he went out with the lantern he was never inside the yard. From Matthew's yard gate to the wood pile it was about the distance across the court house the long way. This was all that occurred. He was not drunk and did not abuse Akin, or draw an axe on him. Other witnesses who saw appellant before and after he was at the home of Akin say that he was not drunk.

One of the charges is that appellant falsely swore that he did not draw an axe on Akin. Before one can be said to have drawn an axe on another it must appear that his act amounted to an assault, and an assault is an attempt or demonstration or effort in striking distance to strike another, although the person threatened may not be actually stricken. Caldwell's Kentucky Judicial Dictionary, p. 262. Akin says that appellant had an axe in his hand. Mrs. Akin says that he had the axe up in his hand and the lantern in the other hand. As the uncontradicted evidence shows that appellant was as far from Akin as across the court house, and only one of the prosecuting witnesses testified that he had the axe in his hand without indicating that it was held up in such manner as to show a purpose to commit an assault, it is at once apparent that the evidence is wholly insufficient to show an attempt, effort, or even a demonstration on the part of appellant when in striking distance to strike Akin with the axe, and that being true it was likewise insufficient to show that appellant had drawn an axe on Akin. There being no evidence to sustain the charge in question it follows that the issue should not have been submitted to the jury.

Though we cannot reverse on that account, we deem it proper to add in view of another trial that the indictment should definitely fix the occasion in reference to which it is claimed that appellant falsely swore. We may also add that the charge that appellant falsely swore that he did not abuse or threaten Akin is too broad and general in its terms. The verb "abuse" has many different meanings. While it is sometimes used in the sense of "revile" or "vilify," it also means "to maltreat," "to hurt," "to dishonor," "to defile," etc. The same is true of the word "threaten." It means "to utter threats against." "to menace," "to inspire with appre-

hension," "to alarm or attempt to alarm, as with the promise of something evil or disagreeable," "to warn." In view of the fact that the use of the words "abuse" and "threaten," without more, leaves it to the witnesses to draw their own conclusions as to their meanings, and necessarily leads to confusion which might result in injustice, we think the indictment, instead of using the words "abuse" or "threaten," should be more specific and set out the language constituting the abuse or conveying the threat to the end that the jury may determine a pure question of fact rather than a question depending upon the sense in which certain words were employed by appellant and the witnesses against him.

Judgment reversed and cause remanded for a new trial consistent with this opinion.